**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APPROXIMATELY $1,113,748.23 IN U.S. CURRENCY SEIZED FROM ACCOUNT NO. 898118513086 AT BANK OF AMERICA, N.A. IN THE NAME OF H SERVICES CORP.**

**Defendant *In Rem*.**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its undersigned counsel, alleges as follows:

### I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure, to forfeit seized funds[1], more fully described as approximately $1,113,748.23 in U.S. currency seized formerly on deposit in account number 898118513086 held at Bank of America, N.A. in the name of H Services Corp. (the "H Services Account"), which

[1] All dates and amounts referenced in this Verified Complaint are approximate.

was seized on or about December 12, 2025, to include accrued interest.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Asset. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Asset were brought upon seizure. *See* 28 U.S.C. § 1355(b)(1).

## III. FACTUAL ALLEGATIONS

At all times material to this Action:

### A. <u>The Medicare Program and Skin Substitutes</u>

5. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

6. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7. Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8. Medicare was a "health care benefit program," affecting interstate commerce as defined by 18 U.S.C. § 24(b).

9. Medicare was subdivided into four parts: hospital insurance (Part A); medical insurance (Part B); Medicare Advantage (Part C); and prescription drug benefits (Part D).

10. Medicare Part B covered, among other things, surgical dressings, such as collagen based wound filler.

11. Health care providers that provided items or services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an enrollment application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the enrolled provider a Medicare provider number.

12. A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for items and services rendered to Medicare beneficiaries. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement, and were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

13. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company. A Medicare claim for a surgical dressing was required to set forth, among other things, the name and unique Medicare identification number of the beneficiary, the product

provided and its size, the date of service, the place of service, the diagnosis, and the identity of the rendering provider.

14. A claim for a surgical dressings, such as collagen based wound filler product, submitted to Medicare qualified for reimbursement only if the product was medically necessary for the treatment of the beneficiary's illness or injury, was ordered by a licensed physician or other qualified health care practitioner and was actually provided to the beneficiary as billed.

### B. H Services and the Fraudulent Billing Scheme

15. As further discussed below, during the month of February 2025, H Services electronically submitted $2,028,480.00 in fraudulent claims to Medicare as reimbursements for wound care dressings, including collagen-based fillers, that were not requested, delivered, or medically necessary for the beneficiaries. Data provided by CMS shows that between February and March of 2025, Medicare disbursed $1,113,763.38 to the H Services Account before the account was voluntarily frozen by Bank of America. Pursuant to the seizure warrant signed by the Honorable Magistrate Torres, the United States seized $1,113,748.23 in Medicare fraud proceeds from the H Services Account.

16. H Services Corp. ("H Services") was a Florida corporation, with its principal office address in Miami, FL, which is within the Southern District of Florida.

17. Florida Department of State Division of Corporations records reflected that H Services was incorporated on February 12, 2024.

18. At all times relevant to this Complaint, the only managing officer of H Services was Humberto Gonzalez Mora ("GONZALEZ MORA").

19. According to Medicare enrollment records, on September 23, 2024, H Services enrolled in Medicare as a Medical Supply Company, listing GONZALEZ MORA as its Authorized Official and identifying the H Services Account as the account into which Medicare was to deposit reimbursement payments.

20. According to Medicare enrollment records, as part of its Medicare provider enrollment application, on April 5, 2025, H Services submitted a voided check and an electronic funds transfer ("EFT") Authorization Agreement for the H Services Account.

**C. <u>The Medicare Fraud Scheme</u>**

21. As described further below, during February of 2025, H Services submitted false and fraudulent claims to Medicare totaling $2,028,480.00 for surgical dressings that were medically unnecessary.

22. According to Medicare records, all claims submitted by H Services to Medicare during this period included the same diagnosis code for an unspecified open wound on the claimed Medicare beneficiary's right knee.

23. Law enforcement interviewed five of the Medicare beneficiaries whose Medicare identification numbers H Services used to bill Medicare.

24. Each interviewed beneficiary stated that he or she was not familiar with H Services, did not receive and did not need collagen based wound fillers or dressings for wounds billed to Medicare using his or her Medicare identification number, and

was not familiar with either Physician 1, who appeared in the Medicare claims data as the rendering provider on H Services' claims

25. According to Medicare records, H Services listed Physician 1 on 74% of the claims it submitted to Medicare and listed Physician 2 on 26% of the claims it submitted to Medicare.

26. Law enforcement interviewed Physician 1, who confirmed that throughout this period, he/she: (a) specialized in cardiology, (b) never heard of H Services, (c) never treated any of H Services' claimed beneficiaries, (d) never prescribed wound care dressings, including collagen-based fillers, and (e) never authorized H Services to use his/her NPI for Medicare billing.

27. Law enforcement interviewed Physician 2, who confirmed that throughout this period, he/she: (a) was a nurse practitioner, (b) never heard of H Services, (c) never treated any of H Services' claimed beneficiaries, (d) never prescribed wound care dressings, including collagen-based fillers in Florida, and (e) never authorized H Services to use his/her NPI for Medicare billing.

**D. <u>The Defendant Asset</u>**

17. The United States obtained bank records for the H Services Account, which showed that February 1, 2025, when Medicare disbursements into the H Services Account began, the account had a balance of $1,823.67.

18. Between February 24, 2025, through March 3, 2025, as a result of H Services' claims for reimbursement, Medicare deposited $1,113,763.38 in U.S. currency into the H Services Account.

19. These Medicare deposits constituted approximately 98.20% of all deposits into the H Services Account, as shown below:

| EFT Check Date | EFT Amount | Deposited Account No. |
|---|---|---|
| 2/24/2025 | $389,424.77 | 898118513086 |
| 2/25/2025 | $161,331.09 | 898118513086 |
| 2/26/2025 | $157,356.71 | 898118513086 |
| 2/27/2025 | $181,161.83 | 898118513086 |
| 2/28/2025 | $150,010.33 | 898118513086 |
| 3/3/2025 | $74,478.65 | 898118513086 |
| **TOTAL** | **$1,113,763.38** | |

20. Based on bank records, on or about April 3, 2025, Bank of America closed the H Services Account and transferred its entire balance of $1,113,748.23 into a hold harmless account.

21. An analysis conducted in accordance with generally accepted accounting principles demonstrated that, as of April 3, 2025, H Services Account's entire balance of $1,113,748.23 was 100% traceable to Medicare reimbursements.

22. On or about December 12, 2025, law enforcement agents served a federal seizure warrant on Bank of America for the balance of the H Services Account. *See* Case No. 25-MJ-04345-TORRES (S.D. Fla.).

23. Pursuant to the seizure warrant, Bank of America remitted to Homeland Security Investigations ("HSI") approximately $1,113,748.23 in U.S. currency from the H Services Account (the "Defendant Asset").

## IV. BASIS FOR FORFEITURE

24. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy to commit such offense is subject to civil forfeiture.

25. Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

26. Health care fraud, in violation of 18 U.S.C. § 1347, is a "Federal health care offense." *See* 18 U.S.C. § 24(a).

**FIRST CLAIM**
**Proceeds of Health Care Fraud**
**18 U.S.C. § 981(a)(1)(C)**

27. The factual allegations in paragraphs 1 through 26 are re-alleged and incorporated by reference as if fully set forth herein.

28. As set forth above, the Defendant Asset is property that constitutes or is derived from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

29. Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Asset; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Asset; that the Defendant Asset be forfeited and

condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Sandra Demirci*

Sandra Demirci (Court ID A5503244)
Assistant United States Attorney
500 East Broward Boulevard
Fort Lauderdale, FL 33394
Telephone: (954) 660-5959
Facsimile: (305) 536-7599
E-mail: sandra.demirci@usdoj.gov
*Counsel for United States of America*

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Manuel Hernandez, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Homeland Security Investigations and that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and that the foregoing factual allegations are true and correct to the best of my knowledge and belief. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the Homeland Security Investigations.

Executed on this 18th of June 2026.

Manuel Hernandez, Special Agent,
Homeland Security Investigations